

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-18-00429-CV

IN RE ESTATE OF HARVEY LEE BRYANT, DECEASED

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 105,815-A, Honorable Dan L. Schaap, Presiding

March 11, 2020

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

This appeal resolves challenges to the trial court's rulings in a dispute among three siblings related to three family trusts. We affirm the judgment of the trial court.

Background

The parties in this case are William ("Bill") Bryant, Leslie Bryant, and Jane Bryant, the three children of Harvey and Joanne Bryant.[1] Joanne died in 2012, followed by Harvey in 2014. Harvey's will was admitted to probate and Bill was appointed the independent executor of Harvey's estate on May 6, 2014.

---

[1] For brevity and clarity, we will refer to the parties by their first names.

Bill also assumed the role of trustee of three family trusts that Harvey and Joanne had created during their lifetimes. The three trusts are known as the Irrevocable Trust, which was executed in 1990; the Children's Trust, which was executed in 1996; and the Family Trust, which was originally executed in 1995, then restated in 2010.[2] Under the terms of the three trusts, following the deaths of Harvey and Joanne, trust assets were to be distributed to the three siblings equally, with the partial exception of the Family Trust assets. Under the Family Trust, Bill and Leslie were to each receive one million dollars, after which any remaining assets would be distributed equally among all three children. This provision of the Family Trust, known to the parties as the "Advancement Clause," stated:

> During Settlors' lifetimes, Settlors have made numerous gifts to their daughter, Jane A. Bryant, totaling at least One Million Dollars ($1,000,000). Settlors consider these gifts to be advancements on any property Jane would have received upon Settlors' deaths from any trust created herein. Therefore, notwithstanding any previous provision herein, my Trustee shall consider and account for the advancements made to Jane in the amount of One Million Dollars ($1,000,000) before making any further distribution to Jane from any trust created herein.

Soon after Harvey's death, Bill received three checks from life insurance companies: one, for $500,041.00, was payable to the Children's Trust and two, totaling $510,938.82, were payable to the Family Trust. According to Bill, he deposited the checks into accounts for the trusts named as payees on the checks, then transferred the funds. However, Jane contended that Bill deposited all three checks into the Family Trust. Either way, the insurance proceeds ended up in the Family Trust. Then, as trustee, Bill

---

[2] Unless indicated otherwise, references to the Family Trust are to the 2010 Restated Family Trust.

distributed $500,000 in Family Trust funds to himself and $500,000 in Family Trust funds to Leslie.

On May 8, 2014, Jane made a written demand that no further distributions be made until she was provided with documentation of her parents' and the Family Trust's assets, liabilities, income, and distributions. Jane then sued Bill, alleging breaches of fiduciary duty and seeking to remove him from his roles as executor of Harvey's estate, trustee of the Family Trust, and co-trustee of the Jane A. Bryant Trust.[3] Jane also sued Leslie and sought to remove her as successor trustee. Bill and Leslie filed counterclaims against Jane.

Following a five-day trial to the bench in 2018, the trial court entered its final judgment, from which Bill and Jane appealed.[4]

## Discussion

On appeal, Bill raises eight issues, some with multiple sub-issues. Jane, as cross-appellant, raises five issues.

---

[3] The Children's Trust provided that separate trusts would be established for the benefit of Bill, Leslie, and Jane. Bill was to be the sole trustee of his separate trust and co-trustee with Leslie of her trust and with Jane of her trust.

[4] The trial court denied all affirmative relief sought by Jane against Leslie.

## I. Issues Raised by Bill, Appellant

Issue No. 1: Elsbeth Property

Bill's first issue challenges the trial court's determination regarding the effect of the Advancement Clause on a loan made to Jane. A brief review of the loan transaction is thus in order.

In 2007, Harvey loaned Jane approximately $209,000 to purchase property, known to the parties as the "Elsbeth property," in Dallas, Texas. The loan bore no interest and was not documented in writing.[5] Using the proceeds of the loan, Jane purchased the Elsbeth property through her company, Align. Although Harvey and Jane intended for the loan to be repaid in less than one year, Jane had not repaid any of it at the time of Harvey's death in 2014.

Bill, as executor and trustee, considered Jane's obligation an asset of the Family Trust.[6] On May 23, 2014, he canceled the Elsbeth loan, making a "deemed distribution" to Jane in the amount of $209,000. Jane disputed this transaction, asserting that the loan for the Elsbeth property was a gift to her and should be considered an advancement under the Advancement Clause of the Family Trust. Both Bill and Jane sought a declaratory judgment to construe the Advancement Clause.

In a suit for declaratory judgment, a person interested in the administration of a trust or estate "may have a declaration of rights or legal relations in respect to the trust or estate," including the determination of "any question arising in the administration of the

---

[5] A deed of trust was filed on the property in 2010 but released shortly thereafter.

[6] Harvey's assets passed to the Family Trust under his "pour-over" will.

4

trust or estate, including questions of construction of wills and other writings." TEX. CIV. PRAC. & REM. CODE ANN. § 37.005(3) (West 2015). Moreover, a trial court with jurisdiction to render a declaratory judgment also has the power to determine issues of fact. *United Servs. Life Ins. Co. v. Delaney*, 396 S.W.2d 855, 858 (Tex. 1965).

On appeal, Bill raises four arguments with respect to the trial court's decision. First, Bill asserts the trial court improperly substituted its judgment for the judgment of the trustee, in violation of the terms of the Family Trust; second, he claims the trial court incorrectly included the forgiveness of the $209,000 Elsbeth property loan in the Advancement Clause; third, he argues that Jane acknowledged the $209,000 loan as a matter of law; and fourth, he contends that the trial court's finding that the Elsbeth loan was forgiven and subsumed within the Advancement Clause was against the great weight and preponderance of the evidence.

Regarding his first argument, that the trial court erred by substituting its judgment for his, Bill points out that the Family Trust gave him authority to interpret and manage the trust, specifically providing:

> If and when in good faith any doubt arises as to the proper construction, interpretation, or operation of a trust established hereunder . . . or as to any other or additional matter involving the administration of a trust established hereunder or the rights of any beneficiary thereof . . . the Trustee is authorized to resolve those doubts as it deems equitable and proper, it being the Settlors' intention to avoid suits for construction or instruction to the fullest extent possible.

Bill notes that the trial court found that the dispute arising from the parties' conflicting viewpoints as to the meaning and scope of the Advancement Clause was "a legitimate one" and "brought in good faith." According to Bill, this finding demonstrates that the trial

5

court acknowledged that reasonable minds could differ. He argues that the trial court then erroneously usurped his authority as trustee to interpret the clause.

We review de novo the trial court's legal conclusions on the construction of a trust. *See Gamboa v. Gamboa*, 383 S.W.3d 263, 273 (Tex. App.—San Antonio 2012, no pet.). "The overriding principle to be observed in construing a trust instrument is to ascertain the settlor's intent with the view of effectuating it." *Lee v. Rogers Agency*, 517 S.W.3d 137, 145 (Tex. App.—Texarkana 2017, pet. denied).

While Bill suggests that his exercise of discretion in determining the status of the Elsbeth loan under the Advancement Clause could not be disturbed by the trial court, Jane counters that the trial court had authority to ensure that Bill effectuated the purpose of the Advancement Clause. We agree with Jane. Even where a trustee is vested with broad discretion, courts may assert control over the trustee's exercise of power "to prevent the frustration of the fundamental intent of the settlor" and compel the trustee's performance of his duty. *Boyd v. Frost Nat'l Bank*, 196 S.W.2d 497, 504 (Tex. 1946).

The Advancement Clause provides that the trustee "*shall* consider and account for the advancements made to Jane in the amount of One Million Dollars ($1,000,000) before making any further distribution to Jane from any trust created herein." The language of the clause is mandatory, not discretionary. The trial court was vested with, and properly exercised, the authority to construe the trust to determine whether Bill complied with the Advancement Clause. Consequently, we overrule this point.

Next, Bill claims that the trial court incorrectly included the forgiveness of the $209,000 Elsbeth property loan as part of the Advancement Clause. Bill and Jane brought competing claims for declaratory judgment concerning the effect of the

6

Advancement Clause on the Elsbeth loan. In its final judgment, the trial court found and declared that "the Advancement Clause in the Bryant Family Trust subsumed the theoretical debt related to the Elsbeth property, and accordingly, Jane Bryant does not owe any reimbursement to the Bryant Family Trust for any such debt."

When a declaratory judgment is entered after a bench trial, we review the trial court's factual findings and conclusions of law de novo. *See McCulloch v. Brewster County*, 391 S.W.3d 612, 615 (Tex. App.—El Paso 2012, no pet.). The trial court's determination in a declaratory judgment action must be upheld if it can be sustained upon any legal theory supported by the evidence. *See Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145, 149 (Tex. App.—Austin 2003, no pet.).

Here, the evidence showed that attorney Ginger Nelson had prepared Harvey and Joanne's wills and their Family Trust. Following the deaths of Harvey and Joanne, Nelson was the only surviving person who had participated in the discussion of the Advancement Clause during Harvey and Joanne's estate planning process. Nelson testified that Harvey and Joanne included the Elsbeth loan when calculating the amount of money they advanced to Jane as reflected by the Advancement Clause. On the other hand, Bill presented evidence that Jane and Harvey both acknowledged that Jane owed Harvey $209,000 for the Elsbeth property. For example, in a letter to Jane in August of 2010, Harvey wrote that he and Joanne "look[ed] forward to the sale of the Elsbeth property and return of the $209,000 loan." At Jane's deposition in April of 2016, she was asked, "At the time of your father's death[,] do you contend that you owed him 209,000 dollars?" Jane answered, "Yes." Of course, Jane contends that at the time of her deposition, she was unaware of the Advancement Clause.

7

Following our careful review of the record, we conclude that the trial court did not err in determining that the Advancement Clause subsumed the Elsbeth debt.

In a related point, Bill contends that Jane acknowledged the loan as a matter of law, thereby removing the loan and its forgiveness from being subsumed in the Advancement Clause. While the record contains evidence of Jane's subjective beliefs that she still owed her father $209,000 on the Elsbeth loan, the status of the loan is not dependent on her subjective mindset. What matters is whether the settlors, Harvey and Joanne, intended for the Advancement Clause to subsume the loan. *See, e.g., Eubank v. First Nat'l Bank*, 814 S.W.2d 130, 134 (Tex. App.—Corpus Christi 1991, no writ) (guarantor's subjective belief of the purpose of guaranty agreement could not negate intent of the parties expressed in document). As set forth above, the trial court did not err in determining that the loan was subsumed by the Advancement Clause.

Finally, Bill argues that the trial court's finding that the loan was forgiven and subsumed within the Advancement Clause was against the great weight and preponderance of the evidence. In reviewing such a challenge, we consider and weigh all of the evidence and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). As discussed above, both parties presented evidence, which we have considered and weighed, regarding whether the loan was intended to be included in the Advancement Clause. We conclude that the finding is not against the great weight and preponderance of the evidence, and overrule Bill's first issue.

Issue No. 2: Distribution of Life Insurance Proceeds

As discussed in the background section above, Bill distributed $500,000 each to himself and to Leslie from life insurance proceeds in the Family Trust. The trial court found that Bill acted with reckless indifference in distributing the insurance proceeds to Leslie and himself through the Family Trust, rather than distributing them under the terms of the Children's Trust and Irrevocable Trust. In its conclusions of law, the trial court determined that this action by Bill constituted a breach of his fiduciary duties as trustee to the Children's Trust and Irrevocable Trust.

In his second issue, Bill identifies several sub-issues related to the trial court's judgment regarding the distribution of life insurance proceeds. Although Bill presents these as eight separate issues, identified as 2A through 2H, he groups them together as six contentions in his brief. We will only address the issues as presented and adequately briefed in the body of Bill's brief. *See* TEX. R. APP. P. 38.1(i) (requiring that brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record).

First, Bill argues that he deposited the insurance checks into the correct trust accounts. The trial court made no specific finding on the factual issue of whether Bill deposited the insurance checks into the correct trust accounts or into incorrect accounts. Our examination of the record reflects no ground for reversal and Bill presents no claim of error warranting discussion in this regard. Therefore, to the extent this argument is intended to be an issue, it is overruled.

Second, Bill asserts that the trial court cannot create a new cause of action. Bill alleges that the trial court "found him guilty" of "reckless distribution," a new cause of

9

action invented by the trial court. Bill's argument misconstrues the trial court's findings of fact. While we do not dispute the premise that the creation of new causes of action should be left to the authority of our state's legislature or Supreme Court, *see Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 10 (Tex. App.—Amarillo 2015) (aff'd, *Kinsel v. Lindsey*, 526 S.W.3d 411 (Tex. 2017)), we do not view the trial court's rulings in this case as an invasion of that authority. An accurate construction of the trial court's findings of fact and conclusions of law shows that the trial court made a factual finding that Bill "acted with reckless indifference to the interests of the beneficiaries in distributing the insurance proceeds that were intended to fund the Bryant Children[']s Trust and the Irrevocable Trust to Leslie and to himself . . . ." The trial court then made a conclusion of law that, in so acting, Bill breached his fiduciary duties as trustee of the Children's Trust and Irrevocable Trust. Bill's reckless indifference was the factual basis for the breach of fiduciary duty claim, not a cause of action in and of itself. Because the trial court did not create, or find Bill "guilty" of, a new cause of action, we overrule this issue.

Third, Bill argues that his deposit and transfer of insurance proceeds was not reckless in fact. Again, the trial court's finding was that Bill "acted with reckless indifference" when he *distributed* the insurance proceeds to himself and Leslie. The trial court made no finding regarding the deposit or transfer of the insurance proceeds. Therefore, to the extent this argument is intended to be an issue, it is overruled.

Fourth, Bill contends that there was no "reckless distribution" because he was relying on advice of counsel. *See In re Estate of Boylan*, No. 02-14-00170-CV, 2015 Tex. App. LEXIS 1427, at *10-12 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op.) (citing RESTATEMENT (THIRD) OF TRUSTS § 93 (2012)) (discussing prudence of trustee

10

seeking advice of legal counsel). We construe this argument as a challenge to the factual sufficiency of the evidence supporting the trial court's finding that Bill acted with reckless indifference by distributing the insurance proceeds to Leslie and himself rather than through the Children's Trust and Irrevocable Trust. Where an appellant attacks an adverse finding on an issue on which the appellee had the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the finding. *See Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex. App.—Corpus Christi 1990, writ denied). When we review an insufficient evidence challenge, we consider, weigh, and examine all the evidence, whether it supports or contradicts the trial court's finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989).

As the trustee of the three trusts, Bill had a fiduciary duty to Jane, a trust beneficiary. A fiduciary has the duty to avoid self-dealing, bad faith, intentional adverse acts, and reckless indifference about the beneficiary and her best interest, and cannot be relieved of liability for such conduct, even in cases where a trust instrument includes exculpatory language. *See InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 888-89 (Tex. App.—Texarkana 1987, no writ) (citing RESTATEMENT (SECOND) OF TRUSTS § 222 (1959)). Moreover, "[a] trustee commits breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently[,] but also where he violates a duty because of a mistake." *Ertel v. O'Brien*, 852 S.W.2d 17, 21 (Tex. App.—Waco 1993, writ denied).

The trial court found that Bill's purported reliance on the advice of counsel did not excuse his conduct, because of Bill's "abject failure to provide appropriate information to counsel." Bill argues that the trial court's findings are contrary to the evidence, against

the great weight and preponderance of the evidence, and erroneous under the law. We disagree.

The evidence at trial showed that when Bill received the insurance checks, he called Nelson, who represented Bill in the probate of Harvey's will, for instructions on distributing the funds. Although Nelson had prepared the Family Trust, Bill acknowledged that she was unaware of the Children's Trust and Irrevocable Trust. He testified:

Q: [Nelson] did not have any involvement in the Bryant Children's Trust or the Bryant Irrevocable Trust?

A: I don't think she knew they existed.

Q: And as the trustee of those trusts, you didn't feel that you should have told her about that?

A: I didn't go to the meeting with my parents. I asked her what to do when the checks came in. I said I've got two half-a-million-dollar checks. What do you want me to do? She said your parents' intentions were very clear. They've redone their trusts. I'm to follow the instructions of the Bryant Family Trust. Document. Follow the instructions.

Q: And in that regard, when she said deposit them into the trust, you just did that irrespective of how the checks were made payable?

A: Correct.

Q: You don't think you should have discussed that with her in more detail?

A: Probably, in hindsight, it would have been a good idea, but that's in hindsight.

Nelson testified that she did not know that the Children's Trust and Irrevocable Trust existed and, if she had, she would have instructed Bill to deposit the checks into the trusts to which they were made payable. Nelson also opined that it was proper for Bill to return the money to the Children's and Irrevocable Trusts and make distributions from those trusts.

This evidence shows that, although Bill sought the advice of counsel in determining how to handle the insurance proceeds, he did so knowing that the attorney did not have critical information that could influence her instruction. Despite his knowledge that Nelson was unaware of the existence of the two other trusts, which had terms of distribution that differed from the Family Trust, Bill chose not to reveal those trusts to Nelson.[7] "[G]ood faith is no defense where the trustee has arbitrarily overstepped the bounds of his authority, or where he has not exercised diligence or has acted unreasonably, or has been guilty of such gross neglect as no reasonably intelligent person would consider proper." *Republic Nat'l Bank & Trust Co. v. Bruce*, 105 S.W.2d 882, 885 (Tex. 1937).

On this record, the trial court, as factfinder, could reasonably conclude that Bill did not exercise the care and diligence required of him as a fiduciary and that his claim of alleged good faith reliance on counsel was not reasonable. We therefore conclude that Jane adduced sufficient evidence to prevail on her claim that Bill failed to comply with his fiduciary duty to her in his handling of the insurance proceeds.

Next, Bill argues that his transfer could not constitute a reckless distribution because the express terms of the Children's Trust permit the trustee to transfer funds from one trust to another. Bill asserts that "[t]ransfers of funds from the Children's Trust was [sic] specifically authorized by the Settlors, Harvey and Joanne . . ." The relevant provision of the Children's Trust states:

> 4.7. <u>Special Multiple Trust Powers</u>. Except for any qualified subchapter S trusts created by this Trust Agreement, the following provisions shall be applicable if the Trust is divided into two or more separate trusts or if the

---

[7] Bill argues that the trial court erroneously determined he breached a duty by (or was "guilty" of) failing to make an adequate disclosure of information to Nelson. This is unsupported by the record. Rather, the trial court's findings and conclusions reflect an evaluation of the reasonableness of Bill's reliance on Nelson's advice, which Bill asserted as a defense to the breach of fiduciary duty claim.

Beneficiaries of this Trust are also beneficiaries of any other trust, whether or not administered by the same trustee or trustees.

(a) Commingling Trusts: The Trustee may, in its sole discretion, commingle all or any part of the assets of the multiple Trusts created by this Trust Agreement and hold such assets as one fund with each separate Trust having proportionate undivided interests therein.

Even if we were to assume that this provision authorized Bill to transfer funds from the Children's Trust or Irrevocable Trust to the Family Trust, the provision does not relieve Bill of his fiduciary duty to Jane. As a fiduciary, Bill was obligated to act with integrity and fidelity, and to deal fairly and in good faith. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (Tex. 1942). Even a transaction that is legally permissible can give rise to a breach of fiduciary claim, as such a transaction may not be in the beneficiary's best interest. As Justice Cardozo put it, "A trustee is held to something stricter than the morals of the market place [sic]." *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928).[8] Therefore, we overrule this point.

Fifth, Bill claims that distribution of funds "ends up the same," whether carried out according to Jane's plan or according to Bill's plan. In support of this point, Bill has provided a chart using illustrative dollar amounts that he alleges show "what would have happened if the original Bill distribution had been carried out to the end." The chart is not part of the record and Bill does not explain the chart with evidence from the record. Bill's claim under this point is *pro forma*, and as such, inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Accordingly, it is overruled.

---

[8] Several Texas courts, including our Supreme Court, have quoted approvingly the discussion of fiduciary duties in the *Meinhard* opinion. *See, e.g., Smith v. Bolin*, 271 S.W.2d 93, 96 (Tex. 1954).

In his sixth point under his second issue, Bill maintains that damages and attorney's fees were improperly awarded against him. The trial court awarded Jane $8,418.38 from Bill for Jane's loss of use of the sum subsequently distributed to her from the Irrevocable Trust. As explained by the trial court's findings of fact, this amount was derived by applying an interest rate of five percent to the period when distribution of the money to Jane was delayed.

Bill makes three statements to support his contention that the award of damages was improper. First, he argues that his distribution method "produces the same bottom line result" as Jane's. As we have explained, this proposition is not supported by Bill's briefing. Second, Bill states that he has not breached any duty to Jane because he followed the distribution method advised by his attorney. We have already determined that the evidence supports the finding that Bill's conduct constituted a breach of fiduciary duty. Third, Bill claims that Jane is responsible, at least in part, for any delay in distributions, because her attorney demanded that all distributions stop. Bill then cites the letter of representation from Jane's counsel, which includes the statement, "[W]e would suggest no such distributions be made to any beneficiary until all beneficiaries have had the ability to review the requested documents." While Bill suggests that this "demand" is partially to blame for his failure to make a distribution to Jane from the Irrevocable Trust, the record belies this contention. Therefore, we conclude the above evidence is sufficient to support the trial court's award on damages.

The trial court also awarded Jane $7,172.78 in attorney's fees from Bill. Bill argues that there is no basis under statute or contract for the award. In response, Jane contends

that attorney's fees are recoverable under section 114.064 of the Texas Trust Code,[9] which provides, "In any proceeding under this code[,] the court may make such award of costs and reasonable attorney's fees as may seem equitable and just." TEX. PROP. CODE ANN. § 114.064 (West 2014). Under section 114.064, the grant or denial of attorney's fees is within the sound discretion of the trial court. *Lyco Acquisition 1984 Ltd. P'ship v. First Nat'l Bank*, 860 S.W.2d 117, 121 (Tex. App.—Amarillo 1993, writ denied). Therefore, we will not reverse the trial court's judgment absent a clear showing that the trial court abused its discretion. *Id.*

The duties that Bill, as trustee, owed to Jane, as beneficiary of the trusts, arose out of the Trust Code. Given our disposition of the breach of fiduciary duty issue, we find no abuse of discretion in the trial court's determination that this award of attorney's fees to Jane was equitable and just.

Bill's second issue is overruled.

Issue No. 3: Construction of Trusts

In his third issue, Bill challenges the trial court's finding "that all [three] trusts should be read to operate independently of each other when it comes to the rights of the beneficiaries and the obligations of the trustees." Bill asserts that, given the identity of the settlors and beneficiaries, it is appropriate to treat the three trusts as a single, unified instrument.

---

[9] The Texas Trust Code is found within the Texas Property Code. *See* TEX. PROP. CODE § 111.001 et seq.

Bill claims that section 4.7 of the Family Trust, the last trust created, provides authority for the proposition that the three trusts must be construed together. However, the provision for "Special Multiple Trust Powers" cited by Bill actually appears in the Children's Trust (1996), not the Family Trust (2010). The portion of the provision referred to by Bill states:

> 4.7. <u>Special Multiple Trust Powers</u>. Except for any qualified subchapter S trusts created by this Trust Agreement, the following provisions shall be applicable if the Trust is divided into two or more separate trusts or if the Beneficiaries of this Trust are also beneficiaries of any other trust, whether or not administered by the same trustee or trustees.
>
> (a) <u>Commingling Trusts</u>: The Trustee may, in its sole discretion, commingle all or any part of the assets of the multiple Trusts **created by this Trust Agreement** and hold such assets as one fund with each separate Trust having proportionate undivided interests therein.
>
> However, the Trustee shall not be obligated to conduct investments or business on an equal basis among such separate Trusts. Settlors expressly intend that each separate Trust be treated as totally distinct trust entities for all purposes.

(emphasis added). This provision governs the commingling of funds in trusts created by the Children's Trust. It does not speak to the construction of separate trust instruments.

Multiple documents relating to the same transaction *may* be read together and *may* be construed as if they were part of a unified instrument. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). In this case, however, we are directed to no evidence, other than the above-quoted provision, purporting to show that the three trust instruments were intended to be construed together. Therefore, we find no error in the trial court's finding that the three trusts should be read to operate independently of each other. We overrule Bill's third issue.

17

Issue No. 4: Attorney's Fees from the Family Trust

In his fourth issue, Bill asserts that the trial court abused its discretion in not awarding him, as trustee, all of his attorney's fees from the Family Trust. Bill presented evidence that he had incurred $116,692 in attorney's fees as trustee of the Family Trust. The trial court allowed payment of $88,373.27 of those fees by the Family Trust. Bill contends that he is entitled to an additional $28,318.73, the balance of the fees.

As discussed under Bill's second issue above, the grant or denial of attorney's fees under the Texas Trust Code is within the sound discretion of the trial court. *Lyco Acquisition*, 860 S.W.2d at 121; *see also* TEX. PROP. CODE ANN. § 114.064 ("In any proceeding under this code[,] the court may make such award of costs and reasonable attorney's fees as may seem equitable and just."). Whether it is equitable and just to award attorney's fees depends on the concept of fairness, in light of all the surrounding circumstances. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004). "Unreasonable fees cannot be awarded, even if the court believes them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998) (discussing award of attorney's fees under Declaratory Judgments Act, which also provides that the court "may" award reasonable and necessary attorney's fees as are "equitable and just").

In this case, the trial court took note of its "time-consuming review of the pleadings, testimonay [sic] and evidence in this case" and determined that "equity and justice would best be served by requiring each Party to be responsible for their own attorney's fees and costs herein," with the exception of (1) Jane's fees incurred in procuring the return of the insurance proceeds and (2) the attorney's fees and costs already paid from the Family

Trust.  Although Bill, as trustee, successfully defended against some of Jane's claims, Jane prevailed on other claims.  The trial court made its decision as a matter of fairness and in light of all the surrounding circumstances, and there is no indication in the record that the decision was arbitrary or unreasonable.  Accordingly, we conclude the trial court did not abuse its discretion.  We overrule Bill's fourth issue.

Issue No. 5:  Breach of Fiduciary Duty to Irrevocable Trust and to Children's Trust

In his fifth issue, Bill challenges the conclusion that he breached his fiduciary duty to the Irrevocable Trust and to the Children's Trust.  He argues that there is no evidence to support the findings or that the findings are against the great weight and preponderance of the evidence.

As discussed under Bill's second issue, the trial court heard evidence that Bill directed insurance proceeds payable to the Irrevocable Trust and the Children's Trust into the Family Trust.  Bill then distributed those funds from the Family Trust to himself and to Leslie, while Jane received no portion of the funds.  Further, Bill failed to inform the attorney from whom he sought guidance that his parents had established the Irrevocable Trust and the Children's Trust.  The trial court also heard evidence that, due to Bill's mishandling of the insurance proceeds, Jane was delayed in receiving distributions from the Irrevocable Trust and the Children's Trust.

These facts support the conclusion that Bill did not administer the trusts with the good faith and care required of him as a fiduciary.  Rather, he engaged in transactions that benefited himself at Jane's expense.  A fiduciary has the duty to avoid self-dealing, bad faith, intentional adverse acts, and reckless indifference about the beneficiary and her best interest. *See InterFirst Bank Dallas,* 739 S.W.2d at 888-89.  Therefore, we

19

conclude that legally and factually sufficient evidence supports the finding that Bill breached his fiduciary duty as trustee of the Irrevocable Trust and the Children's Trust.

In a tangential argument, Bill asserts that the trial court was required to find that Bill breached his fiduciary duty to Jane, not to the trusts, before damages could be awarded to Jane. Bill cites no authority for this proposition. Therefore, to the extent the statement is intended to be a point of error, it is overruled. *See* TEX. R. APP. P. 38.1(h); *Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 755 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Also as part of his fifth issue, Bill argues that the trial court improperly removed him as co-trustee of, and terminated, the Jane A. Bryant Trust. Section 113.082 of the Texas Property Code lists circumstances under which a trial court may remove a trustee. *See* TEX. PROP. CODE ANN. § 113.082 (West 2014). Section 113.082(a)(4) provides that a trustee may be removed if "the court finds other cause for removal." *Id.* We review the trial court's decision to remove Bill as trustee under an abuse of discretion standard. *See Bergman v. Bergman-Davison-Webster Charitable Trust*, No. 07-02-00460-CV, 2004 Tex. App. LEXIS 1, at *4 (Tex. App.—Amarillo Jan. 2, 2004, no pet.) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily and unreasonably. *Id.* at *4-5.

Here, the trial court found that "other cause" existed for the removal of Bill as co-trustee of Jane's trust. The trial court's findings of fact, supported by the record, reflect that Bill and Jane were "battling siblings" with a "caustic relationship," operating in an atmosphere of acrimony and mutual distrust. Rather than reiterate that evidence in detail here, suffice it to say that it supports the trial court's determination that "other cause"

exists to remove Bill as co-trustee. *See id.* at *9 (where trustee contributed to environment of hostility and friction, and such conduct affected or impeded the operation of the trust, trial court did not abuse discretion in removing trustee); *see also Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (upholding trial court's decision to remove trustee where trustee had not made reasonably prudent investment decisions and had demonstrated hostility that interfered with her ability to properly manage trusts). Therefore, we conclude that the trial court did not abuse its discretion in removing Bill as co-trustee of Jane's trust.

In a related argument, Bill asserts that the court erred by "giving away" the contingent beneficial interest in the trust.[10] The trial court ordered Jane, as remaining trustee of the Jane A. Bryant Trust, to distribute all remaining trust assets to herself as primary beneficiary, following which, the trust terminated. We review a trial court's determination regarding termination of a trust for abuse of discretion. *See* TEX. PROP. CODE ANN. § 112.054(b) (West Supp. 2019); *Swantner-Carter v. Frost Nat'l Bank*, No. 13-06-00545-CV, 2008 Tex. App. LEXIS 5989, at *10 (Tex. App.—Corpus Christi Aug. 7, 2008, no pet.) (mem. op.).

Section 112.054 of the Texas Trust Code authorizes a court to terminate a trust on the petition of a trustee or beneficiary. TEX. PROP. CODE ANN. § 112.054(a). Among other reasons, a trust may be terminated when (1) the purposes of the trust have been fulfilled or have become illegal or impossible to fulfill, or (2) because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust. *Id.*

---

[10] Under the terms of the trust, Jane's interest would pass first to Bill and Leslie, then to their children, upon Jane's death.

The purpose of the Jane A. Bryant Trust is to provide for Jane's "health, education and maintenance needs."  The terms of the trust direct the trustee to "give primary consideration" to Jane when administering the trust.  In addition, the trust gives the trustee discretion to distribute *all* of the income and/or principal of the trust when necessary or appropriate to provide for the beneficiary's health, education, maintenance, and support.

The trial court heard evidence that Jane has significant medical expenses totaling over $100,000, is unemployed, and has a terminal illness that prohibits her from working.  Jane testified that she doesn't have any retirement savings and that she has outstanding legal bills incurred in this litigation.  Having sold her home, she now pays monthly rent.  Jane testified that she sought a distribution from her trust to assist with these obligations.  Bill maintains that Jane has "current, and significant, cash resources."  Jane testified that she had "about $350,000 worth of cash left."

The trial court found that "Jane's circumstances justify the distribution of the entirety of her part of the Children[']s Trust to her."  The trial court made this finding in light of evidence of the stated purposes of the trust; Jane's health, maintenance, and support needs; the antagonistic relationship between Bill and Jane; Bill's improper distribution of trust funds to himself and Leslie; and Bill's reluctance to make distributions to Jane from her trust.  Under these facts, we find no abuse of discretion in the trial court's decision.

Bill's fifth issue is overruled.

<u>Issue No. 6: In Terrorem Clause</u>

Bill alleged that Jane violated the in terrorem clause of the Family Trust by filing this lawsuit and, therefore, she forfeited her interest under the trust. However, the trial court found that the in terrorem clause was not triggered in this case. In his sixth issue, Bill asserts that this finding is against the great weight and preponderance of the evidence.

In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence. *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 546 (Tex. App.—Austin 1999, pet. denied). We will set aside the finding only if the evidence is so weak or the finding so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

The in terrorem clause in the Family Trust provides:

<u>No Contest</u>. If any beneficiary under any trust created herein (including a secondary beneficiary or recipient of trust property upon termination of any trust) in any manner, directly or indirectly, contests or attacks the validity of any trust or any disposition under any trust, by filing suit against my Trustee or otherwise, then any share or interest given to that beneficiary under the provisions of this Trust is hereby revoked and shall be disposed of in the same manner as if that contesting beneficiary and all descendants of that beneficiary had predeceased me.

In support of his claim that the in terrorem clause was triggered, Bill sets forth evidence that Jane has a litigious nature, which was well-known to their parents, and that she eagerly anticipated the opportunity to have her siblings haled into court. Be that as it may, we will find a violation of a no-contest clause only when the acts of the party come within the express terms of the clause. *Badouh v. Hale*, 22 S.W.3d 392, 397 (Tex. 2000).

In terrorem clauses are to be strictly construed and forfeiture avoided if possible. *In re Estate of Hamill*, 866 S.W.2d 339, 342 (Tex. App.—Amarillo 1993, no pet.).

Here, Jane did not contest or attack the validity of the trust. She brought a declaratory judgment claim seeking the proper construction of the terms of the trust and a breach of fiduciary duty claim to determine whether Bill had administered the trust in accordance with those terms.

We do not construe the language of the in terrorem clause as prohibiting a beneficiary from instituting legal action against a trustee for breach of his fiduciary duties. "The right to challenge a fiduciary's actions is inherent in the fiduciary/beneficiary relationship." *McLendon v. McLendon*, 862 S.W.2d 662, 679 (Tex. App.—Dallas 1993, writ denied). Nor do we construe the in terrorem clause as prohibiting a suit seeking to construe terms of the trust, because such a suit affirms the validity of the trust. *See In re Estate of Hamill*, 866 S.W.2d at 341 n.1 (in terrorem clauses typically make gifts conditional on the beneficiary not challenging the validity of the instrument).

Because the nature of Jane's suit was not to set the trust aside, but rather to compel the trustee to carry out the trust's terms, we agree with the trial court that the in terrorem clause was not violated in this case. We overrule Bill's sixth issue.

Issue No. 7: Prejudgment Interest for Retention of Over-Distribution

Bill's next issue contends that the trial court erred by failing to award prejudgment interest against Jane for her retention of an over-distribution. This claim relates to the trial court's award of $105,192.84 to the Family Trust from Jane for her retention of excess funds from the trust.

There are two sources for an award of prejudgment interest: (1) an enabling statute and (2) general principles of equity. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Where, as here, no statute controls the award of prejudgment interest, the decision to award prejudgment interest is left to the discretion of the trial court, which should rely upon equitable principles and public policy in reaching its decision. *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 487 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g). We therefore review the trial court's decision to award prejudgment interest under an abuse of discretion standard. *See Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W.3d 342, 348 (Tex. App.—Fort Worth 2004, pet. denied). Under this standard, we will not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

The amount of the excess distribution to Jane was not determined until, among other things, the trial court ruled on the scope of the Advancement Clause and the effect of the Family Trust's payment of Jane's outstanding mortgage, which we discuss in Part II of this opinion. The trial court found that the prosecution and defense of the parties' conflicting viewpoints in their competing pleadings regarding the effect of the Advancement Clause were brought in good faith.

On the record before us, we conclude the trial court did not abuse its discretion in declining to award prejudgment interest. *See, e.g., Pickens v. Alsup*, 568 S.W.2d 742, 744 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.) (denying prejudgment interest where there was "a serious and genuine dispute regarding ultimate liability, which was contested

in good faith by the parties, and the amount of damages could not be ascertained until final judgment."). We overrule Bill's seventh issue.

Issue No. 8: Additional Attorney's Fees

The trial court ordered each party to pay their own attorney's fees and costs, except for (1) reasonable and necessary fees Jane incurred to rectify the misapplication of, and procure the reimbursement of, the insurance proceeds Bill misdirected, and (2) fees paid by the Family Trust prior to trial, which amounted to $88,373.27. In his final issue, Bill argues that the trial court abused its discretion by denying additional attorney's fees to him or the trusts.

Bill asserts that, as trustee, he is entitled to $21,004.56 in attorney's fees for the Irrevocable Trust; $93,353.60 for the Children's Trust; and an additional $28,318.73 for the Family Trust. He identifies three reasons why he is entitled to attorney's fees: (1) the trial court erred in determining he breached his fiduciary duties to the Children's Trust and Irrevocable Trust; (2) the Children's Trust and Irrevocable Trust provide for the recovery of attorney's fees; and (3) section 114.064 of the Texas Property Code allows him to recover his attorney's fees.

We have already determined that the trial court did not err in its conclusion that Bill breached his fiduciary duties. We turn next to Bill's contention that he is entitled to fees under the Children's Trust and Irrevocable Trust. The Children's Trust provides:

> All Trustees shall be entitled to advancement or reimbursement for expenses incurred pursuant to their duties under this Trust Agreement, including fiduciary liability insurance. They are also entitled, at the expense of the Trust, to retain and hire employees, accountants, attorneys, investment advisors, or other persons incident to the management of the Trust, the Trust Estate, or any other matter which might arise during the administration of this Trust.

26

The Irrevocable Trust provides, "The Trustee may pay property taxes, assessments, charges, mortgages and maintenance expenses; attorney fees; the Trustee's compensation and other expenses incurred in the administration or protection of this trust."

The Children's Trust does not provide guidance as to what constitutes an expense incurred pursuant to a trustee's duty, nor what expenses are "incident to the management of the Trust." However, the inclusion of these terms in the trust indicates that, to be reimbursable from the trust, fees and expenses must meet some conditions, at the very least providing a benefit or service to the trust. In his brief, Bill merely sets forth the amount of attorney's fees he incurred as trustee; he does not explain how these fees furthered his management or administration of the Children's Trust. In the absence of any such explanation, we cannot say that the trial court abused its discretion in declining to award Bill additional attorney's fees under the Children's Trust. *See, e.g., American Nat'l Bank v. Biggs*, 274 S.W.2d 209, 222 (Tex. App.—Beaumont 1954, writ ref'd n.r.e.) (discussing considerations for whether trustee should be awarded attorney's fees in suit involving administration of the trust).

The Irrevocable Trust only provides that the trustee "may" pay attorney's fees. Again, without evidence of why the payment of attorney's fees was mandated by the trust's terms, we find no abuse of discretion in the trial court's decision to decline to award them. *Id.*

Finally, as discussed in our analysis of Bill's second and fourth issues above, the decision whether to award attorney's fees under section 114.064 is within the sound discretion of the trial court. *See* TEX. PROP. CODE ANN. § 114.064 (court may make such

award of attorney's fees as seems equitable and just).  For the reasons identified above, we will not disturb the trial court's decision regarding the recovery of attorney's fees by Bill or the trusts.  We overrule Bill's eighth issue.

## II. Issues Raised by Jane, Cross-Appellant

Issue No. 1: Discovery of Tax Information

In her first issue, Jane contends that the trial court abused its discretion by denying her access to her parents' 1099 forms and complete federal income tax returns from 2006 to 2016.[11]  When Jane requested this information via discovery, Bill objected, and Jane filed a motion to compel production.  The trial court granted the motion to compel in part, directing Bill to produce Schedules A, D, and E.[12]  The trial court's order provided that Bill could provide both a redacted and unredacted copy of the schedules for the court's in camera review in the event that Bill determined the schedules contained sensitive or irrelevant information.  After Bill provided the redacted schedules, Jane moved the trial court to reconsider its ruling and grant her full access to the unredacted schedules, the 1099 forms, and the complete federal income tax returns filed by her parents.  The trial court granted the motion in part, ordering Bill to produce unredacted Schedules A, D, and E.  Jane's request for 1099 forms and complete tax returns was denied.

We review a trial court's ruling on a motion to compel discovery for abuse of discretion.  *Johnson v. Davis,* 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)).  Trial

---

[11] Jane initially requested information for the time period of 1990 to 2016.

[12] Schedule A reflects itemized deductions, Schedule D reflects capital gains and losses, and Schedule E reflects supplemental income and loss.

courts have broad discretion in discovery matters. *Id.* Consequently, we will reverse a trial court's ruling on a motion to compel only when the trial court acts in an arbitrary and unreasonable manner, without reference to any guiding principles. *See Barnett v. County of Dallas*, 175 S.W.3d 919, 924 (Tex. App.—Dallas 2005, no pet.).

> Years ago, the Texas Supreme Court cautioned that:
>
> Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between the litigants outweighs protection of their privacy. But sacrifices of the latter should be kept to a minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

*Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) (orig. proceeding).

Once an objection is raised, the party seeking discovery of tax returns has the burden of demonstrating their relevance and materiality. *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex. App.—San Antonio 1994, orig. proceeding). Additionally, the requesting party must show that the information sought through the returns cannot be obtained from some other source. *Kern v. Gleason*, 840 S.W.2d 730, 737-38 (Tex. App.—Amarillo 1992, orig. proceeding).

Here, Jane claims that the tax returns are relevant because the case involves allegations of improper accountings and valuations, and because the returns would develop her claim that her parents made certain lifetime gifts that did not count as advancements under the Advancement Clause. Jane also points to testimony from her accounting expert that the information was necessary for the preparation of Jane's case. Jane asserts that this information cannot be obtained elsewhere.

The record indicates that Jane requested and received voluminous records regarding the assets and liabilities of her parents' estates and the trusts they established, such as bank statements, brokerage account statements, retirement account statements, insurance policy information, and much more. Additionally, Jane took the deposition of the accountant who provided accounting services to her parents and the trusts. Jane has not convinced us that the information she received was insufficient to allow her to identify the assets and liabilities of the estates and trusts or to develop her claims. Based on these facts, we conclude that the trial court did not abuse its discretion in determining that Jane is not entitled to production of the income tax returns. Therefore, we overrule Jane's first issue.

Issue No. 2: Removal of Bill as Trustee of Family Trust

In her second issue, Jane asserts that the trial court abused its discretion by declining to remove Bill as trustee of the Family Trust. Jane sought Bill's removal as trustee of all three trusts on the basis that he materially violated the terms of the trusts and/or his fiduciary duties as trustee. She specifically asserted improper distributions and improper accountings, among other things. The trial court removed Bill as co-trustee (with Jane) of the Jane A. Bryant Trust, and ordered the termination of the Bryant Irrevocable Trust upon Bill's prompt distribution of the remaining assets. However, the trial court declined Jane's request to remove Bill as trustee of the Family Trust. On appeal, Jane maintains that the trial court should have removed Bill in light of (1) the trial court's conclusions that Bill breached his fiduciary duties as trustee of the Children's and Irrevocable Trusts and (2) Bill's handling and accounting of Family Trust funds.

Under the Texas Trust Code, a court may, in its discretion, remove a trustee under certain circumstances, including where "the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust," or where "the court finds other cause for removal." TEX. PROP. CODE ANN. § 113.082(a)(1), (4). Accordingly, we review a court's decision on whether to remove a trustee under an abuse of discretion standard; the decision will not be overturned absent an abuse of discretion. *See Kappus v. Kappus*, 284 S.W.3d 831, 838 (Tex. 2009).

As set forth above in the analysis of Bill's second issue, the trial court found that Bill acted with reckless indifference in distributing the insurance proceeds to Leslie and himself, thereby breaching his fiduciary duties as trustee of the Children's Trust and Irrevocable Trust. However, the trial court did "not find any other alleged act or alleged omission on the part of Bill in the management of the Family Trust to constitute a wrongful act or omission sufficient to justify his removal as Trustee of the Family Trust."

Based on the text of the statute authorizing removal of a trustee, it is clear that not every breach by a trustee requires the trustee's removal. *See* TEX. PROP. CODE ANN. § 113.082(a) (providing that "a court *may, in its discretion*, remove a trustee" for enumerated reasons) (emphasis added). In this case, the trial court considered Bill's mishandling of the insurance proceeds, which did not result in any financial loss to the trusts, and determined that this failure was insufficient to justify removal. Although Jane lodges multiple complaints about Bill's performance as trustee, the trial court did not find, and the record does not support, any other breach. Under these circumstances, we

cannot say that the decision not to remove Bill as trustee was an abuse of discretion. Jane's second issue is overruled.

Issue No. 3: Interest on Misapplied Funds

Jane's third issue alleges that the trial court erred by not awarding her interest for the funds that were misapplied and later ordered to be distributed to her from the Children's Trust. Jane sought damages for her loss of use of the funds in the Children's Trust and Jane A. Bryant Trust from April 14, 2014, when Bill received the insurance proceeds, to May 5, 2015, when those proceeds were returned to the Children's Trust. The trial court found that Jane was not entitled to such damages. We review the sufficiency of the evidence supporting the trial court's decision to award no damages on Jane's claim.

Although the trial court found that Bill breached his fiduciary duty with regards to the funds intended for the Children's Trust, this does not necessarily indicate that Jane suffered the loss of use of those funds. Bill, as trustee of the Children's Trust, had discretion whether and when to distribute trust funds to or for the benefit of beneficiaries. *See Kolpack v. Torres*, 829 S.W.2d 913, 915 (Tex. App.—Corpus Christi 1992, writ denied) (beneficiary under discretionary trust is entitled only to income or principal that trustee, in its discretion, shall distribute to him; beneficiary cannot compel trustee to pay him). The evidence shows that, after the insurance proceeds were returned to the Children's Trust in 2015, Bill made no distribution to Jane from the trust. The trial court found that the language of the trust "arguably supports" Bill's decision to consider Jane's existing assets before he made distributions to Jane. Because Jane could not show that Bill was required to exercise his discretion to make a distribution to her from the trust, she

32

could not establish that she incurred damages for the loss of use of the trust funds. *See*

*A.B.F. Freight Sys., Inc. v. Austrian Imp. Serv., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—

Dallas 1990, writ denied) (no recovery for speculative or conjectural damages).

We therefore conclude that sufficient evidence supports the trial court's finding that Jane was not entitled to damages resulting from Bill's misapplication of the Children's Trust funds.

Issue No. 4: Lovers Lane Property

In her fourth issue, Jane asserts that the trial court's finding and conclusion that she owed the Family Trust for the Lovers Lane debt was not supported by legally or factually sufficient evidence.

As trustee of the Family Trust, Bill paid off the $119,271.30 balance of the mortgage on the Lovers Lane property that was Jane's home. Bill counted this payment as a distribution to Jane from the Family Trust. Jane contends that the payment should not count against her as a distribution from the trust because (1) the evidence "conclusively establishes the inclusion of the Lovers Lane property in the $1,000,000 advancement to Jane" and (2) Bill's payment of the mortgage on the property was a "voluntary payment."

The trial court found that the third-party debt remaining on the Lovers Lane property fell outside the reach of the Advancement Clause, that Jane was not harmed by Bill's decision to pay off the mortgage for her benefit, and that the payoff amount counted as a distribution from the Family Trust to Jane. We agree with the trial court's determinations.

The Lovers Lane property was purchased in 1999 by Harvey, Joanne, and Jane, who shared ownership and the accompanying mortgage on the property. Jane began living at the Lovers Lane property shortly after the purchase. In 2008, Harvey and Joanne gifted their interests to Jane. However, the property remained encumbered by the mortgage at that time. While a donor may make a gift of encumbered property and agree to discharge the debt, a donor "is not bound to pay off the indebtedness unless there is evidence that he intended to pay it." *Estate of Kuenstler v. Trevino*, 836 S.W.2d 715, 717-18 (Tex. App.—San Antonio 1992, no writ). Here, there is no indication that Harvey and Joanne intended or agreed to make the remaining payments on the mortgage, either directly or via the trusts. Moreover, the Advancement Clause contained in the Family Trust was added in 2010 and speaks to prior, not future, gifts to Jane: "During Settlors' lifetimes, Settlors *have made* numerous gifts to their daughter, Jane A. Bryant, totaling at least One Million Dollars ($1,000,000)" (emphasis added). The elimination of the balance remaining on the mortgage at Harvey's death in 2014 was not a gift he or Joanne had already made in 2010. Consequently, we conclude that the only portion of the Lovers Lane property that was included in the Advancement Clause was the inter vivos gift of Harvey and Joanne's interests in the property.

Next, Jane claims that since she never requested a payment from the Family Trust for the Lovers Lane mortgage, the payment should count as a gratuitous "voluntary payment" rather than a distribution. We disagree. Under the Family Trust, Bill, as trustee, was vested with some discretion in the operation of the trust, including the discretion to make distributions either "to" or "for the benefit of" a beneficiary. Although his payment of the Lovers Lane debt was not a direct distribution to Jane, it was a payment made for her benefit, as it resulted in Jane owning her home free and clear of any mortgage lien.

34

Given the trustee's discretion and Jane's history of financial insecurity, we agree with the trial court's finding of no fault with Bill and no harm to Jane in Bill's decision to make a distribution to Jane in the form a mortgage payoff. Therefore, we overrule Jane's fourth issue.

Issue No. 5: Jane's Attorney's Fees

As set forth in our analysis of Bill's eighth issue, the trial court ordered each party to pay their own attorney's fees and costs, except for (1) reasonable and necessary fees Jane incurred to rectify the misapplication of, and procure the reimbursement of, the insurance proceeds Bill misdirected, and (2) certain other fees and costs paid prior to trial. Jane was awarded $7,172.28, the amount of her legal fees attributable to procuring the reimbursement and redistribution of the insurance proceeds to the Irrevocable Trust and Children's Trust.

In her fifth issue, Jane raises two arguments related to the trial court's award of attorney's fees. First, she asserts the trial court erred by not awarding her an additional $143,162.82 for attorney's fees under the Children's Trust. Second, she claims the trial court abused its discretion by limiting its award of attorney's fees to her to $7,172.28.

A trial court's determination of whether to award attorney's fees is reviewed for abuse of discretion. *See Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37, 50 (Tex. App.—Fort Worth 2001, pet. denied). When we review a trial court's decision under this standard, we review the evidence in the light most favorable to the trial court's ruling and indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Under Texas law, litigants may only recover attorney's fees if a statute or contract specifically provides for such recovery. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Jane asserts that the Children's Trust itself mandates the award of attorney's fees to her. She cites the Trust's provision on trustee expenses, which provides:

> All Trustees shall be entitled to advancement or reimbursement for expenses incurred pursuant to their duties under this Trust Agreement, including fiduciary liability insurance. They are also entitled, at the expense of the Trust, to retain and hire employees, accountants, attorneys, investment advisors, or other persons incident to the management of the Trust, the Trust Estate, or any other matter which might arise during the administration of this Trust.

Jane argues she, as a co-trustee under the Children's Trust, is entitled to an additional $143,162.82 in attorney's fees under the terms of the trust because she incurred such fees while litigating issues arising during the administration of the trust. She asserts that these issues included whether Bill breached his fiduciary duties to the beneficiaries of the Children's Trust and whether he properly distributed the funds in the Children's Trust. As we explained in our discussion of Bill's claim for attorney's fees under this provision, the Children's Trust does not identify which expenses are incurred pursuant to a trustee's duty or "incident to the management of the Trust." But a reasonable construction suggests that recoverable fees must be those incurred for the benefit of the trust.

The evidence of attorney's fees presented by Jane indicates that her attorney's fees and expenses were allocated among four matters: Harvey's estate, the Irrevocable Trust, the Family Trust, and the Children's Trust. The $143,162.82 she seeks on appeal is reflected as the total amount attributable to her attorneys' work on the Children's Trust. But the evidence does not show that this amount was incurred pursuant to Jane's duties

36

as a co-trustee of, or for the management or administration of, the Children's Trust. Because Jane initiated this lawsuit as a trust beneficiary as well as co-trustee of the Jane A. Bryant Trust, and because she was not successful in all of her claims against Bill and Leslie, the trial court, acting within its discretion, could have found the $143,162.82 reflected fees and expenses that were not incurred by Jane pursuant to her duties as a co-trustee or for the administration of the Children's Trust. Therefore, we cannot say that the trial court abused its discretion in declining to award Jane $143,162.82 in attorney's fees under the Children's Trust.

Jane next argues that she incurred $161,090.64 in fees and expenses related to recovering funds from the Irrevocable Trust and the Children's Trust. The trial court's award of $7,172.28 in attorney's fees was based on the time period from May of 2014, when the insurance proceeds were first distributed by Bill, to May of 2015, when the proceeds were returned and redistributed through the appropriate trusts. Jane maintains that, by limiting her recovery of fees to $7,172.28, the trial court "ignores the fact that the true reimbursement of those funds did not occur until final judgment." We disagree.

It is undisputed that Bill and Leslie returned the misdirected insurance proceeds, and those proceeds were deposited into the appropriate trust accounts, in May of 2015. Although Jane continued to seek the distribution of her share of the Children's Trust after that point, the trial court acknowledged that Bill had reason to delay making such a distribution. The return of the insurance proceeds to the proper trusts is a separate issue from the timing of Jane's receipt of distributions from those trusts. We find no abuse of discretion in the trial court's decision to limit Jane's recovery of attorney's fees to those

fees incurred in connection with the reimbursement claim.  Accordingly, Jane's fifth issue is overruled.

## Conclusion

We affirm the judgment of the trial court in all respects.


Judy C. Parker
Justice